## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 21 2019, 10:24 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deidre L. Monroe
Public Defender's Office
Crown Point, Indiana

ATTORNEY FOR APPELLEES

Julie R. Glade
Law Office of Julie R. Glade, RN, JD
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

R.S.,

*Appellant-Respondent,*

v.

J.S.S. and K.S.,

*Appellees-Petitioners*

May 21, 2019

Court of Appeals Case No.
18A-AD-2812

Appeal from the Lake Superior Court

The Honorable Alexis Vazquez Dedelow, Referee

Trial Court Cause No.
45D06-1708-AD-139

**May, Judge.**

[1] R.S. ("Father") appeals the trial court's grant of a petition to adopt R.D.S.[1] ("Child") filed by J.S.S. ("Stepfather"). Father argues Stepfather did not provide sufficient evidence from which the trial court could make findings and conclusions that: (1) Father had failed to significantly communicate with Child for at least a year; (2) Father had failed to provide for the care of Child for at least a year; and (3) adoption was in Child's best interests. We affirm.

# Facts and Procedural History

[2] K.S. ("Mother") gave birth to Child on June 25, 2011. On March 12, 2014, Father established paternity, was granted parenting time pursuant to the Indiana Parenting Time Guidelines, and was ordered to pay $50.00 per week in child support. Mother married Stepfather in July 2017, though Stepfather has been a presence in Child's life since approximately 2012.

[3] On August 23, 2017, Stepfather filed a verified petition for adoption, which alleged Father's consent to the adoption was not required per statute. Father appeared at the initial adoption hearing on January 29, 2018, and orally objected to Child's adoption. The trial court appointed counsel for Father. On March 5 and April 16, 2018, the trial court held hearings regarding Child's adoption, specifically regarding whether Father's consent was required for the adoption and whether adoption was in Child's best interests. On October 2,

---

[1] As part of the adoption order, Child's name was changed to D.A.D.

2018, the trial court entered its order on adoption, outlining numerous findings to support its decision to grant Stepfather's petition to adopt Child. On October 22, 2018, the trial court issued an order and decree of adoption granting Stepfather's petition to adopt Child.

# Discussion and Decision

[4] We will not disturb a decision in an adoption proceeding unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion. *In re Adoption of M.A.S.*, 815 N.E.2d 216, 218 (Ind. Ct. App. 2004). We will not reweigh the evidence or judge the credibility of witnesses. *Id.* Instead we examine the evidence most favorable to the decision together with reasonable inferences drawn therefrom to determine whether there is sufficient evidence to sustain the decision. *Id.* The decision of the trial court is presumed correct, and it is the appellant's burden to overcome that presumption. *Id.*

[5] When, as here, the trial court *sua sponte* enters findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A), we apply a two-tiered standard of review. *In re Adoption of A.S.*, 912 N.E.2d 840, 851 (Ind. Ct. App. 2009), *trans. denied*. First, we determine whether the evidence supports the findings and second, whether the findings support the trial court's conclusions. *Id.* The trial court's findings or conclusions will be set aside only if they are clearly erroneous. *Id.* A finding of fact is clearly erroneous if the record lacks evidence or reasonable inferences from the evidence to support it. *Id.* Issues on which the trial court makes no findings will be reviewed as a general judgment. *C.B. v.*

*B.W.*, 985 N.E.2d 340, 344 (Ind. Ct. App. 2013), *trans. denied*. A "general judgment will be affirmed if it can be sustained upon any legal theory by the evidence introduced at trial." *Id.*

### *Consent Not Required*

[6] Generally, courts may not grant a petition for adoption without the consent of the child's biological parents. Ind. Code § 31-19-9-1(a). There are, however, exceptions to that general rule. The exception at issue herein provides:

> (a) Consent to adoption, which may be required under section 1 of this chapter, is not required from any of the following:
>
> * * * * *
>
> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>
>> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or
>>
>> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.
>
> * * * * *
>
> (11) A parent if:

> (A) a petitioner for adoption proves by clear and
> convincing evidence that the parent is unfit to be a
> parent; and
>
> (B) the best interests of the child sought to be
> adopted would be served if the court dispensed with
> the parent's consent.

Ind. Code § 31-19-9-8(a)(2)(B) (2016). When considering whether a parent has knowingly failed to support a child for one year, we note "the relevant time period is not limited to either the year preceding the hearing or the year preceding the petition for adoption, but is any year in which the parent had an obligation and the ability to provide support, but failed to do so." *In re Adoption of J.T.A.*, 988 N.E.2d 1250, 1255 (Ind. Ct. App. 2013), *reh'g denied, trans. denied*.

[7] Father argues Stepfather did not adequately demonstrate his consent was not required due to failure, for a period of one year, to communicate significantly with Child or to provide for Child's care. Because Indiana Code section 31-19-9-8 is written in the disjunctive, we need only to decide if Stepfather provided sufficient evidence for one of these factors. *See Matter of Adoption of E.M.L.*, 103 N.E.3d 1110, 1116 (Ind. Ct. App. 2018) (statute written in disjunctive therefore petitioner required to prove one factor), *trans. denied*. We conclude Stepfather presented sufficient evidence to support the findings and conclusion that Father's consent was not required because Father had failed to provide for Child's care and support for at least a year.

[8] Regarding this issue, the trial court found:

9. Pursuant to the Judgement on Paternity, Child Support and Parenting Time entered on March 12, 2014, Father was awarded parenting time with Minor Child on alternating weekends from Friday at 4:30 p.m. to Sunday at 6:00 p.m. and holidays pursuant to the Indiana Parenting Time Guidelines and Father's weekly child support obligation was ordered at $50.00 per week in support.

* * * * *

24. Per Court Orders of October 15, 2013, and March 12, 2014, Father was ordered to pay child support for Minor Child in the amount of $50.00 per week retroactive to October 15, 2013. Father was employed at a gas station at the time. Father worked odd jobs between 2014 and 2017; including, but not limited to working at Trinity Hospital, Wendy's, Strack's, his uncle's company and IHOP.

25. Between 2012 and 2014, Father paid a total of $900.00 directly to Mother toward child support payments; and, an additional $200.00 in 2013.

26. In the summer of 2014, Father contacted Mother asking her to meet him in Whiting, Indiana, so that he could pay her $150.00 toward child support. At said meeting, Father asked Mother for a kiss, then became angry and belligerent. Father appeared to be intoxicated and was unstable on his bicycle. Mother was concerned for her safety and Father did not give Mother the child support he had promised.

27. Paternal grandmother opened a savings account for all of her grandchildren, including Minor Child. Father has not contributed toward this savings account. Father has not paid child support since 2014.

(Appellant's App. at 8, 10) (errors in original).  Father argues he was consistent with child support when given parenting time, he wanted to pay his child support and would do so starting immediately, and he "has tried [the] best he could to meet his obligations" despite his "incarceration, lack of driver license, and lack of steady employment[.]"  (Br. of Appellant at 13.)

[9]     However, Father testified at the hearing that he could have paid child support and there was "no good reason" that he had not.  (Tr. Vol. II at 144.)  He also testified he was not "denying child support" but had money to buy "weed and cocaine[.]"  (*Id.* at 165.)  He indicated he did not think it was "right" for him to "just giv[e] [Mother] the money and [he's] not seeing [his] kid."  (*Id.* at 125.)  Father's testimony at the hearing also supports the trial court's findings that he was employed multiple times through the years and did not pay child support though able to do so.  Father's arguments are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do.  *See In re Adoption of M.A.S.*, 815 N.E.2d at 218 (appellate court cannot reweigh evidence or judge the credibility of witnesses).  The evidence supports the trial court's findings, and those findings support the court's conclusion that Father had failed to provide for Child's care and support for one year.  *See*, *e.g.*, *Matter of Adoption of A.M.K.*, 698 N.E.2d 845, 847 (Ind. Ct. App. 1998) (affirming trial court's decision that father's consent to child's adoption was not required because father did not support child for one year, during which he was voluntarily unemployed), *trans. denied*.

## Child's Best Interests

[10] "The primary concern in every adoption proceeding is the best interests of the child." *In re Adoption of M.S.*, 10 N.E.3d 1272, 1281 (Ind. Ct. App. 2014). Even if the trial court determines a parent's consent is not required for adoption, the court still must decide if adoption is in the child's best interests. *Id.* While the adoption statutes do not provide guidance regarding the factors a court is to consider when determining the best interests of the child,

> we have noted that there are strong similarities between the adoption statute and the termination of parental rights statute in this respect. *See In re Adoption of M.L.*, 973 N.E.2d 1216, 1224 (Ind. Ct. App. 2012) (holding that the adoption statutes and the termination statutes provide similar balances between parental rights and the best interests of the children; also holding that termination cases provide "useful guidance as to what makes a parent 'unfit'"). In termination cases, we have held that the trial court is required to look to the totality of the evidence to determine the best interests of a child. *In re I.A.*, 903 N.E.2d 146, 155 (Ind. Ct. App. 2009). Relevant factors include, among others, a parent's historical and current inability to provide a suitable environment for the child, *In re J.C.*, 994 N.E.2d 278, 290 (Ind. Ct. App. 2013) [,*reh'g denied*]; the recommendations of the child's case worker or guardian ad litem; and the child's need for permanence and stability*, see A.J. v. Marion Cnty. Office of Family and Children*, 881 N.E.2d 706, 718 (Ind. Ct. App. 2008) [, *trans. denied*].

*Id.* at 1281-2. Father argues Stepfather did not provide sufficient evidence from which the trial court could make findings and conclude adoption was in Child's best interests. We disagree.

Regarding factors relevant to Child's best interests, the trial court found:

> 10. . . . Mother discovered that Father was dropping off Minor Child at an undisclosed location with an unknown person. On several occasions, Mother requested that Father inform her of the name, phone number and location of the person to whom Father was taking their son during his parenting time. Despite repeated requests, Father refused to provide Mother with the requested information. Mother was concerned for the safety of Minor Child, who was a young toddler at the time, so Mother declined Father's parenting time until he provided Mother with the information as to where and with whom Father was leaving Minor Child. At no time, did Father provide Mother with said information; instead Father advised Mother not to worry about it and that he was taking Minor Child to someone's home close to Maternal Grandfather's home.

> * * * * *

> 16. Mother has had the same telephone number since Minor Child was born and has resided in the same home since 2012. Father has failed to provide Mother with his updated location and phone number(s) over time. Father admitted that he did not expect Mother to be able to reach him based on his changes in contact information, and that he had not reached out to Mother for parenting time as much as he could have.

> 17. Over the years, Father has suffered from alcohol and drug addiction which have led to legal consequences for excessive use of alcohol, such as charges of public intoxication, disorderly conduct and driving under the influence . . . Furthermore, Father has also been charged with possession of marijuana and cocaine. Father has not had a driver's license since he was 19 years old.

> * * * * *

19. Father's criminal arrest history includes operating a vehicle while intoxicated in 2012 and again in 2013; felony battery conviction as a plea agreement from charges of rape, criminal confinement, strangulation, interference with reporting a crime and battery causing moderate bodily injury in 2016; public intoxication, disorderly conduct, resisting law enforcement and driving while suspended in 2017. Father's criminal behavior has contributed to his failure to contact his son.

\* \* \* \* \*

29. By all accounts, Minor Child is currently thriving under the care of Mother and Step-Father. He is happy, empathetic, bright, engaging and outgoing. Step-Father and Mother ensure that Minor Child is engaged with outside activities, and that he participates in a close relationship with all members of his extended family.

30. Step-Father has known Mother since 2008 or 2009. During Mother's pregnancy with Minor Child, Step-Father, Mother and Father all resided together.

31. Step-Father has known Minor Child since birth, and became more actively involved in Minor Child's life since June 2012, when Minor Child was only one (1) year old. Step-Father became more regularly involved on a daily basis and actively participated in Minor Child's life and case since Minor Child was three or four years old.

\* \* \* \* \*

33. Minor Child considers Step-Father to be his dad and Step-Father considers Minor Child to be his son. The relationship between them consists of a close, stable father-son relationship.

34. Step-Father is able to financially support Minor Child, and provides Minor Child with everything he needs. Step-Father assists Mother with providing Minor Child with health care, and to provide Minor Child with support to receive the education he needs.

(Appellant's App. Vol. II at 8-10) (errors in original).

[12] Despite these findings, which Father does not challenge,[2] Father contends adoption is not in Child's best interest because Mother "purposely refused" to allow Child to visit with Father. (Br. of Appellant at 15.) Father acknowledges he does not have a relationship with his son, and Father asks for additional time to develop that relationship. Father's arguments are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re Adoption of M.A.S.*, 815 N.E.2d at 218 (appellate court cannot reweigh evidence or judge the credibility of witnesses). Because the trial court's unchallenged findings support the trial court's conclusion that adoption is in Child's best interest, Father has not demonstrated clear error in the court's reaching this conclusion. *See, e.g.*, *In re Adoption of M.L.,* 973 N.E.2d 1216, 1223 (Ind. Ct. App. 2012) (concluding father unfit as parent due to continued substance abuse and instability; and concluding adoption was in child's best interests because she was thriving in adoptive parents' care).

---

[2] Unchallenged findings "must be accepted as correct." *Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992).

# Conclusion

[13]     Stepfather presented sufficient evidence to support the trial court's findings, which support the trial court's conclusions that Father's consent was not required for Stepfather's adoption of Child and that adoption was in Child's best interest.  Accordingly, we affirm.

[14]     Affirmed.


Mathias, J., and Brown, J., concur.